UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ROBERT S. SCHMIDT,

    Plaintiffs,

v.     CASE NO. 18-cv-00114

STEEL-CRAFT CORP. OF HARTFORD,

    Defendant.     JURY TRIAL DEMANDED

## COMPLAINT

### NATURE OF THE ACTION

Plaintiff, ROBERT S. SCHMIDT ("Mr. Schmidt"), brings this action pursuant to the Americans With Disabilities Act, as amended ("ADA") 42 U.S.C. §12101, et seq. to remedy acts of employment discrimination and retaliation perpetrated against him by STEEL-CRAFT CORP. OF HARTFORD ("Steel-Craft").

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343.

2. The Employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin.

### PARTIES

3. Mr. Schmidt is a citizen of the United States and a resident of Wisconsin. At all times relevant to this action, Mr. Schmidt was a qualified individual with a disability as defined

by the ADA and was employed by Defendant until his employment was terminated on June 23, 2016.

4. At all relevant times, Defendant Steel-Craft has been incorporated in the State of Wisconsin with the Principal Office in Hartford, Wisconsin, and has been doing business in the State of Wisconsin, and, under information and belief, has continuously employed over three hundred (300) people.

5. At all relevant times, Defendants have continuously been an employer engaged in an industry affecting commerce under Section 101(5) and 101(7) of the ADA.

## ADMINISTRATIVE EXHAUSTION

6. Mr. Schmidt has complied with all the administrative prerequisites to action under Section 706 of Title VII as required.

7. A Notice of Suit Rights was issued on October 31, 2017 for EEOC charge Number 443-2017-00559.

## FACTUAL ALLEGATIONS

8. Mr. Schmidt became a welder for Defendants beginning January 18, 2016.

9. Mr. Schmidt continued successfully through his employment, never receiving any indication of poor performance.

10. He always got along well with his coworkers and supervisors and met all expectations after his sixty-day performance review, scoring 102% on productivity.

11. Beginning in late May 2016, Mr. Schmidt began feeling the some of the symptoms of his Deep Vein Thrombosis and Protein S. Blood Deficiency.

12. His condition required medical attention and forced him to miss two days in early June, which were reported directly to the plant manager, Ralph Fechhelm.

13. During that conversation, Mr. Schmidt made it clear that he was suffering from his medical disability that he had suffered for over fifteen years.

14. He stated that the condition caused periodic blood-clots, some of which can be seriously threatening, requires medication and impairs his ability to stand for long periods of time.

15. Mr. Schmidt was told not to worry and to take care of himself so he could get back to work.

16. However, on or about June 9, 2016 Mr. Schmidt was given a written warning regarding attendance points for tardies.

17. This was a surprise to him, as he was never given any warning that he was receiving so many attendance points for tardies.

18. He worked very similar schedules, including when he showed up or left, as another, non-disabled welder, yet only Mr. Schmidt received this write-up without any verbal warning.

19. His shifts would regularly be scheduled from 6:00 am to 2:30 pm but if he wanted to work overtime, he could come in early or stay late for overtime.

20. He would agree to do extra time, but was told he was get written up for not coming in at 5:00 am even though he would work nine-hour days.

21. Defendant's attendance policy requires that a verbal warning be given prior to any written warning, yet Mr. Schmidt was never given a verbal warning.

22. Because his non-disabled coworker was not given attendance points for the same actions, and because he was not given a verbal warning, Mr. Schmidt complained that he felt the discipline was unfair and seemed to be an attack on the fact that he was disabled.

23. Starting on or about June 16, 2016, Mr. Schmidt again had to seek medical treatment for his condition and obtained a doctor's note excusing his absence.

24. Around that same time, coworkers began noticing the swelling in his ankle and commenting that he should go to the hospital.

25. On June 20, 2016, upon waking, it was obvious to Mr. Schmidt that he was going to have to go to the hospital and that standing on his foot would be impossible for a ten-hour shift.

26. He promptly sent a detailed text message to Mr. Fecchelm explaining his need to go to the hospital.

27. Again, he was told to take care of himself so that he could come back to work.

28. He texted Mr. Fecchelm again the next morning, explaining that he was still feeling the symptoms of his condition and that his doctor recommended he be out the whole week.

29. He made it clear that he would return as soon as possible though he did have to miss June 22, 2016 as well.

30. He was never asked to provide additional information, nor was he asked to produce specific documents.

31. Nonetheless, on June 23, 2016, he came in to work and provided documentation of his medical condition from the hospital.

32. No one indicated to him at that time that his communications were insufficient or that he was in danger of losing his job.

33. Knowing that the progressive discipline policy is a verbal warning, a written warning and a suspension prior to any termination based on attendance, Mr. Schmidt did not believe his job was in jeopardy.

34. However, at the end of his shift on June 23, 2016, he was called in to the Human Resource Department and told he was being discharged due too many unexcused absences because his medical documentation was insufficient.

35. Mr. Schmidt asked for the opportunity to provide that documentation.

36. Defendant's response was that it would not matter if he provided it because the decision had already been made to terminate his employment.

37. Despite this information, Mr. Schmidt did obtain more documentation of his excused absences, with a letter requesting his reinstatement based on the medical documentation.

38. Defendant's ignored his attempts discuss his attendance.

## Count One
## Violation of ADA
### (Employment Discrimination Based on Disability)

39. Mr. Schmidt realleges and incorporates by reference the allegations contained in all preceding and all subsequent paragraphs of the Complaint as though fully set forth herein.

40. This claim is authorized and instituted pursuant to the provisions of the Americans with Disabilities Act, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Mr. Schmidt complains of Defendants' violation of the ADA's prohibition against discrimination in employment based, in whole or in part, upon an employee's disability.

41. During his employment with Defendant, Mr. Schmidt was a member of a class protected under the ADA.

42. Defendants had notice of Mr. Schmidt's disability or otherwise perceived Mr. Schmidt to be disabled.

43. Mr. Schmidt's disability was a motivating factor in creating the adverse employment actions against him as described herein.

44. Defendants discriminated against Mr. Schmidt by disciplining him without warning for violations of policy that should have triggered the interactive process.

45. Every single one of the corrective actions described herein were done as a pretext to hide the true motivating discriminatory factor for the discipline.

46. As Mr. Schmidt's employment would not have ended but for reaching certain levels of attendance points, each and every corrective action is responsible, in and of itself, for the ultimate outcome of employment termination.

47. Defendant further discriminated against Mr. Schmidt by terminating his employment due to his disability, as well as his need, request and use of accommodations.

48. Defendants' acts and omission are the direct and proximate cause for the adverse employment actions against Mr. Schmidt in violation of the ADA.

49. As a further direct and proximate result of Defendants' wrongful acts and omissions, Mr. Schmidt sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice

50. The intentional and discriminatory conduct of the Defendants complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages, which will serve as an example and deterrent to Defendants and others who would commit similar illegal acts.

51. As Defendant's engaged in discriminatory employment practices with malice or with reckless indifference to Mr. Schmidt's federally protected rights, Mr. Schmidt is entitled to punitive/exemplary damages in addition to compensatory damages, attorney fees and other remedies available under the ADA.

## Count Two
### Retaliation for Engaging in Protected Activity
**(ADA)**

52. Mr. Schmidt realleges and incorporates by reference the allegations contained in all preceding and all subsequent paragraphs of the Complaint as though fully set forth herein.

53. Mr. Schmidt is and was, at all relevant times, a qualified individual with a disability, or was otherwise perceived as such.

54. Mr. Schmidt made requests for his condition to be accommodated.

55. Suddenly and without warning, Mr. Schmidt was disciplined for his use of accommodations related to attendance.

56. Mr. Schmidt then made complaints that he was being treated unfairly because of his disability.

57. Defendants attempted to hide their true intentions by alleging violations of attendance policy even though they had not followed their own progressive discipline policy.

58. The intentional and retaliatory conduct of Defendants complained of herein was willful, wanton, deliberate, malicious, egregious and outrageous warranting the imposition of punitive/exemplary damages, which will serve as an example and deterrent to Defendant and others who would commit similar illegal acts.

59. As Defendants engaged in retaliatory employment practices with malice or with reckless indifference to Mr. Schmidt's federally protected rights, Mr. Schmidt is entitled to punitive/exemplary damages in addition to compensatory damages, attorney fees and other remedies available under the ADA.

-7-
Case 2:18-cv-00114-WED   Filed 01/23/18   Page 7 of 9   Document 1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ROBERT S. SCHMIDT respectfully requests that this Court:

A. Order Defendant STEEL-CRAFT CORP. OF HARTFORD to make whole M. Schmidt, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement.

B. Order Defendant STEEL-CRAFT CORP. OF HARTFORD to make whole Mr. Schmidt, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to job search expenses, effects on credit history, debt, increase in insurance costs and other incidental expenses, in amounts to be determined at trial.

C. Order Defendant STEEL-CRAFT CORP. OF HARTFORD to make whole Mr. Schmidt by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained above, including, but not limited to emotional pain, suffering, inconvenience, humiliation and mental anguish, in amounts to be determined at trial.

D. Order Defendant STEEL-CRAFT CORP. OF HARTFORD to pay Mr. Schmidt punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

E. Award Mr. Schmidt his reasonable attorney's fees and costs, including but not limited to expert witness fees as provided for under the ADA.

F. Award Mr. Schmidt with interest on any awards at the highest rate allowed by law; and

G. Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMAND

Plaintiff, ROBERT S. SCHMIDT, requests a jury trial on all matters as to which he is entitled by law.

LAW OFFICE OF ADAM M. KENT

Dated: January 22, 2018

s/Adam M. Kent
Adam M. Kent
State Bar No.: 1099634
7670 N. Port Washington Rd., Suite 105
Milwaukee, Wisconsin 53217
Telephone: 414-446-5331
Facsimile: 888-509-8232
E-Mail: Attorney@adamkentlegal.com
*Attorney for Plaintiff*